3-16-0005 People of the State of Illinois Appellate by Nicholas Atwood v. Gene O'Brien, Appellant by Demetrius Goldfuss. Please proceed. Good morning, Justice Carter. Good morning again, Your Honor. Demetrius Goldfuss, I'm from the Office of the State Appellate Defender, and I represent Gene O'Brien. May it please the Court, Counsel. The defendant in this case was convicted of one count of retail theft. The conviction stemmed from her alleged theft of a decorative coral that she had placed on hold at a closed department store. We've raised two claims on appeal. First, we argue that the evidence at trial was insufficient to prove that Ms. O'Brien intended to steal this coral that she had placed on hold. The second issue is a claim of ineffective assistance of counsel. We argue that counsel was ineffective for agreeing that the prosecutor could present evidence that the loss prevention officer in this case, Susan Weber, directed her attention to Ms. O'Brien in this case because she knew Ms. O'Brien due to a previous professional encounter, which would have allowed the jury to easily infer that Ms. Weber had caught Ms. O'Brien committing retail theft at Kohl's on a prior occasion. With that said, I'm going to focus my argument today on our claim of insufficient evidence, and I'll rest my claim that counsel was ineffective. I'll rest my reply brief on all my briefs. But of course, if you all have any questions regarding the claim of ineffective assistance, I'd be happy to answer them. Before I address the merits of our claim of insufficient evidence, I want to comment briefly on the state's brief in this case. The state in its brief has made numerous misrepresentations of fact. I've touched upon most, if not all, of those in my reply brief. And in my reply brief, I've also included in the appendix numerous screenshots from the surveillance video in this case, which demonstrate that the state has made misrepresentations as to what the surveillance video shows. I would, however, like to address three of the misrepresentations that the state makes in this brief concerning the surveillance video. First, the state argues in this brief that the surveillance video shows Ms. O'Brien taking the whole bag to the cashier's counter and placing it out of the cashier's reach. The surveillance video does not show that. What the video shows is Ms. O'Brien placing the whole bag directly onto the cashier's counter, right next to the cash register, and within view and arm's reach of the cashier. The state also argues in this brief, and it gives specific citations to timestamps on the surveillance video, that at those timestamps, Ms. O'Brien quickly grabbed the bag and concealed it below the cashier's counter. In other words, if you look at the entirety of the surveillance video, not just those timestamps, the video does not show Ms. O'Brien doing that. At those timestamps, Ms. O'Brien actually picks up the bag towards the end of the transaction, lifts it above the counter, and moves it to the other side of the counter. I'd also note that the loss prevention officer testified that she, in the video, shows her standing near the counter as she witnessed this alleged theft, and not even she testified that Ms. O'Brien concealed this whole bag below the counter. Finally, the state argues in its brief that when Ms. O'Brien supposedly concealed this bag below the counter, she did so when the cashier's back was turned, again citing the same timestamps. If you look at those timestamps, when Ms. O'Brien lifted the whole bag, the cashier was actually facing her. We can all – we've got the video. We can all look at it. Sure. And again, those are just the primary misrepresentations I wanted to highlight for the court. And we would just urge this court, given the nature of the state's brief, to carefully scrutinize what the state says the facts are in this case. Turning to our claim of insufficient evidence, the state needed to prove that Ms. O'Brien intended to steal and the decorative coral she had placed on hold. The state did not do that. Neither the surveillance video, the testimony about what she did when she was at the cashier's counter, the discrepancy between the price she paid and the price she should have paid for the corals, nor what she told Officer Bieber when she was detained. None of that evidence is criminal intent or consciousness appeal. The surveillance video, which I've already alluded to, it shows her at customer service being given a hold bag. It's a Kohl's gray shopping bag. It's knotted at the top, and there's a piece of paper stapled to it. We know from the testimony that that's a hold slip, and it had her name and the date the item was placed on hold. She takes the hold bag to the cashier's counter. She places it on the counter. It doesn't conceal it in any way. While the cashier is wrapping another coral that she actually purchased in tissue paper, and as she bags it and brings it up, Ms. O'Brien can be seen on the surveillance video looking at her phone, looking at her purse, and speaking with the cashier. She didn't pay for what was in the bag. Correct. She did not pay for what was in the hold bag. All right. Correct. Ms. O'Brien, we know from the testimony that she paid for the price that the cashier asked her to pay. Ms. O'Brien, according to her testimony, actually questioned the cashier as to whether the price she paid was correct. The cashier assured her that it was. Ms. O'Brien was given a receipt, and the surveillance video shows her leaving Kohl's with the hold bag and also the coral that she purchased without looking at her receipt. Apparently, when the law prevention officer followed her outside and told her to come back inside, Ms. O'Brien did not flee. She came back inside voluntarily without any difficulty. The surveillance video, which is the most objective piece of evidence we have in this case, does not allow an inference of criminal intent or conscience of guilt, and neither does the testimony about what Ms. O'Brien did at the counter. Now, to address the price discrepancy here, this is not a case where the price discrepancy was considerably large between what she paid and what she should have paid, such that a red flag would have been raised. The discrepancy that we're talking about is between $11 and $15. That's roughly 12 to 16 percent of the full retail value of two corals, which is the number of corals Ms. O'Brien testified she intended to purchase. That is a very small amount of money. Now, the evidence is a bit conflicting as to the value of those corals, but we know for a fact that she paid for a large coral, which was priced at 65 percent off, and she paid $18.99. We also know that the hold bag contained two corals, two smaller corals, and that the full value of those corals was $70 for both corals. So that's where I'm getting my figures from. On the day she placed the hold, the corals were 30 percent off. On the day she went to Kohl's and made the purchase, they had increased to 50 percent off. She also had an additional 15 percent off coupon on her phone. Now, had Ms. O'Brien that day done the math at 65 percent off, then she should have expected to pay between $31 and $35 for the two corals that she intended to pay for. She ultimately paid around $20. It's our position that that small price discrepancy would not have alerted her, given the number of discounts that she had, multiple discounts, would have alerted her that she had only paid for one coral. Now, there's a couple more points I want to make with regards to the price discrepancy. This alleged offense occurred at a Kohl's. Kohl's is not your typical boutique in downtown Ottawa or even your neighborhood Walmart, whereas a shopper, you pay prices on the price tag. As this case illustrates, Kohl's offers customers discount upon discount upon discount. And if a shopper in Ms. O'Brien's position is intending to pay for multiple items with a full value of $90 and is expecting to receive a 65 percent off discount, and she estimates that she has to pay $20, and her estimation is off by $12, 12 percent of the value of the full rates of value of these corals, as it was in this case, it's fair to say that her estimation is in the ballpark. The second point that I want to make is that the cashier told Ms. O'Brien that these corals were $19.99, less 50 percent off, less an additional 15 percent off. And if you do that math, you take 50 percent off of $19.99 plus an additional 15, it comes to $8.50. If you multiply $8.50 by 2 to signify the number of corals Ms. O'Brien testified she thought she was purchasing, that comes to $17, which is very, very close to the amount of money she actually paid. The last piece of evidence that I want to address is the answers that Ms. O'Brien gave to Officer Gaber when she was detained. None of these answers evidenced criminal intent or consciousness of guilt. He first asked Ms. O'Brien why she didn't notice paying for the corals in the whole bag. Her answer was that she was in a hurry and that she wasn't paying much attention. That answer was responsive to the officer's question and it is a reasonable, innocent explanation. The officer next asked her why she didn't notice paying only $18 for items that should have cost over $70. She said she assumed it was her discount. I've already addressed that $70 figure is not accurate. Had she done the math and taken the pay for two corals, it would have been between $31 and $35. And again, her answer of I assumed it was a discount was responsive to the officer's question and it was reasonable and innocent. And it was the exact same response that the cashier gave her when she questioned whether the price she was paying was correct. The exact same response. Finally, the officer asked her two more questions, but we don't know from her record what those questions were. The state is arguing in its brief that her answers were preposterous. I don't see how we can determine that her answers were preposterous if we don't even know what the questions were. Now, she ultimately answered that she has trouble with her eyesight, she couldn't see very well, and she perhaps didn't notice the whole bag sitting on the counter. Those answers would be responsive and perfectly reasonable to such questions as did you take a look at the receipt to see what was hung up and what items were there, or did you see the cashier do anything with the whole bag? Those would have been perfectly reasonable responses. In sum, Your Honors, the state's case against Ms. O'Brien is premised on fake facts and evidence that does not reveal criminal intent or a consciousness of guilt. The state fails to prove an essential element of the offense, and we respectfully request that this Court reverse Ms. O'Brien's conviction outright. And if the Court has any questions, I'd be happy to answer them. I have one factual question. Sure. There was an indication in one of the briefs that she had put one coral on hold, but that there were two in the bag. Is that correct? That is correct. She testified that she had placed one coral on hold. There were two in the bag. The bag was given to her by customer service sealed. It was knotted. She does not look at the bag. She does not look inside the bag when she takes it to the cashier. So the customer service number, anyone from customer service testifying as to yes, Jeanne O'Brien called and she placed this many corals on hold. We don't know. All we have is Ms. O'Brien's testimony. I placed one on hold, and we know what was in the hold bag once the loss prevention officer opened it and Ms. O'Brien was being detained. Would that likely make her expectation of what the cost would be less if she thought there was only one coral in the bag? Yes, Your Honor. I mean, as I've argued here, if she was expecting one coral to be in the bag, her expectation would have been to pay between $31 and $35. My calculation is based on the evidence. Okay. At 65% off, she should have expected to pay. I understood your argument. I didn't hear you talk about one coral. Correct. Let me follow up with a question, then. We will watch the video, maybe even together, while we're here in Ottawa. However, does the video show your client putting the bag on the belt? Because they shop at Kohl's all the time, and they have a belt at the grocery store. Did she put the bag on the belt? There was not a belt. It was just a counter. It wasn't a moving counter? No, just a counter, a flat counter, just like this. She placed it here, next to the cash register, and then ultimately, later in the transaction, she picked it up, lifted it above the counter, and moved it over here. The video doesn't show her bending down or reaching down. Part of the time, the view is blocked.  There's a mannequin that blocks the left side of the counter. So part of the scene is blocked. You can't see what's happening. Correct. The left side of the counter is blocked by the mannequin. All that's shown in the snapshots that I've included in my reply brief. There's a mannequin that's blocking part of the scene. Correct. But even with that mannequin, it does not show. Even if we were to assume that she did place the bag below the counter, or concealed it below the counter, there's a mannequin. The video just doesn't show that. And the law convention officer, who's standing right there, didn't testify that she concealed it below the counter. Okay. Thank you. Thank you, Your Honor. Question. Good morning, Your Honor's counsel. May it please the Court. Before I begin, I'd like to address counsel's assertion that the people have somehow misrepresented facts in this case. As you both know, the defendant has challenged whether or not she was convicted beyond a reasonable doubt, specifically the element of intent with regard to a retail theft. We are, as such, required to draw reasonable inferences from both direct and circumstantial evidence that was presented at trial. That's the role of the jury in this, and that's our role on review. Obviously, counsel and I have viewed the same video, and we've reached contrary conclusions as to what inferences can be drawn from the defendant's actions. Fortunately, as the judges have indicated, you have a copy of the video, and I encourage you to watch that video and review that video in a light most favorable to the State, and determine whether or not there is sufficient evidence to overturn the jury's guilty verdict. And also to determine whether Ms. Degolfis is correct, and there was some deliberate misrepresentation. We'll be looking at it for that. Certainly. And I believe the video is going to show that all the things that were asserted in our brief did occur. Because it's a strong accusation. It is a strong accusation, but that accusation isn't what we're trying to determine today. We're trying to determine what that video shows. And so, as far as the video is concerned, we see Susan Weber testify that she's a loss prevention supervisor at Kohl's. She observed the defendant come in, and she testified that she focused her attention on the video because she had a previous professional encounter with the defendant. Throughout the entire duration of the defendant's time at Kohl's, she's on video. She first goes to the rear of the store, where she receives the hold bag containing the coral that she had held previously. As the counsel stated, that bag is knotted, there's a hold slip stapled to the front of it. The defendant also notices a larger decorative coral, that she obviously determines that she's going to buy. She takes these items to the cashier's register, and there's a large counter up at the cashier's register. And the defendant hands the large decorative coral, which is fragile, to the cashier for the cashier's hand. But the video shows that the defendant doesn't place the bag directly in front of the cashier. The defendant places the bag off to her right, slightly obstructed from the cashier's perspective by a cash register and by merchandise that is on the defendant's side of the cash register. And throughout the entire portion of the defendant's interaction, she doesn't address this bag that she's placed there. She leaves it sitting there. And it's our inference that the defendant wanted to see if she could get away with using this bag as a Trojan horse, if you will. Because even as Susan Weber testified, the bag's presentation could have been confusing to the cashier, because it could indicate that it had already been paid for. The bag was knotted shut. There was a white piece of paper resembling a receipt stapled to the front of the bag. And it was our assertion and our inference, and our inference that the jury could have concluded as well, that the defendant counted on this fact, disguising that she was going to try to get away with it. Because it's plausible deniability. If the cashier does raise the question, oh, I forgot, here you go, then she's off. That's what we're trying to get at here. Because we don't know exactly what was in the defendant's head, and we certainly don't know what was in the jury's head. All we can do is make reasonable inferences based on what we've seen. And obviously there are two sides to every coin, and that's why we're advocating here in the first place. And what's also telling, I think, about the defendant's behavior, is that the counsel made an enormous argument about what the price was of these items. That was never established. That's his math. That wasn't evidence that was presented at trial. We don't actually know what the smaller quarrels were priced at, and there's no evidence concerning what the defendant tried to calculate in her head. The defendant never indicated she was aware at all of what the price was. All the defendant indicated was that it seemed a bit low. And additionally, counsel cited the statements of the cashier. Well, at trial, that was objected to, as Hugh say, and the trial court specifically instructed the jury to only consider that evidence based on the defendant's actions, not for the fact that those items cost $19.98 or whatever they cost. So that's an inappropriate argument to make in front of this court, because that's not what the jury was considering when they were trying to make their determination of whether or not the defendant intended to steal these items. And while the defendant also asserts that she never reached for the bag and the cashier always faced her, that's inaccurate. On page 816 of the reply brief, the defendant has a photo still, which clearly shows the defendant is reaching for the bag, but the cashier is nowhere in the shot. As we argued in our brief, the cashier had momentarily turned away from the defendant, and at that moment, the defendant reached for the bag. However, the cashier quickly turned back to the defendant, and that's rather than concealing the bag immediately, the defendant pulled the bag closer to her. But before, I believe it's 717 in that video, before that moment, the bag is concealed below the counter. And so the reasonable inference that can be made is that the defendant took the opportunity to get the bag away from the cashier's view to further attempt to get it out of the store without having to pay for it. It only occurred that during that time stamp, the cashier quickly turned back to the defendant when she was in the middle of reaching for the bag. And that's clearly visible in the reply brief. What also infers the defendant guilt is not just her interactions with the cashier, because we did argue that the cashier was distracted by trying to apply the defendant had used her cell phone to have the barcode scanned on Nicole's app or on an email that she received. And so the cashier's dealing with all of this. Nobody's paying attention to this bag. It's sort of just sitting off to the right. And what's more, the defendant challenged the fact that we asserted in our brief that the bag was out of the arm's reach of the cashier. That's clear on the video. The cashier spends most of her time wrapping the fragile coral, dealing with the defendant, having been handed the bag. But it's not within arm's reach. It's two or three feet. A lay person could observe that. There may be a few seconds where the cashier is closer to the bag, but for the majority of the transaction, she's not near the bag. Additionally, counsel brought up the questions that the defendant was asked. Once she was apprehended by Susan Weber, the East Peoria police came. They interviewed the defendant in the back room of the Kohl's store. One thing that was specific that the officer stated is that the defendant spent most of the time he was trying to interview her texting on his cell phone, and she was difficult to deal with. He asked her why didn't she pay. Well, the first excuse the defendant provided there is that she was in a hurry. She wasn't paying attention. Well, a review of the entire video shows the defendant was not in a hurry. She took her time. She walked to the back of the store. She retrieved her gold item. She selected another item to purchase. She casually walks to the front of the store. She hands the coral to the cashier. She looks up the discounts on her phone. She's doing these other things. There's nothing indicative about her being in a hurry. That's not believable, and it was up to the jury to infer that. And that would call into question the defendant's credibility. But that was not the only excuse that she provided for why she walked out with this merchandise that the justice correctly pointed out that she never paid for. She was also asked, didn't the price seem low? And she never provided a specific price. She just said she thought her Kohl's cash covered the difference. That would be a plausible excuse if it were the only excuse. But it was one of a series of excuses that the defendant provided. And because she provided multiple excuses, that could have caused the jury to infer that she lacked credibility or that she was lying, and thus she was guilty. And finally, counsel brings up the fact that we don't know exactly what questions Officer Bieber asked the defendant when she said, maybe I didn't see the bag on the counter. Well, we don't know exactly what he said, but the answer begs the question. And while counsel created hypothetical questions that were nowhere to be found in the record and were complete assumptions on his part as evidence of what she may or may not have been answering, we don't know. We can look at the answer, and we can infer that there was some question in the context of, did you steal these items, did you pay for these items? But other than that, we don't know. That was a question for the jury, and the case law in this state says the jury is in a better position to infer context and to make decisions based on the witness testimony. And now, even considering that answer, that maybe she didn't see the bag, is completely absurd. She placed the bag on the counter in the first place. She carried the bag from the front of the store. She testified that she knew those items weren't paid for. And additionally, it's a large gray Kohl's bag with a receipt stapled on it, less than three feet in front of her face. She testified that she had trouble with her eyesight, that's true, but she said it with regard to small prints and things like reading. She testified in trial that she could see things from across the room. So it was reason for the jury to infer, if you could see things across the room, you could see that Kohl's bag right there, and so I don't believe you. And all of those were reasonable inferences that could have been made, and that's the tenor of the people's brief when we argue that these are all things that the jury could have inferred based on the evidence. And regarding the concealing of the bag, the bag was concealed at some point below the counter. We don't know exactly what second that occurred because, as the justice stated, there was some obstruction there. But it is clear that before the defendant exited the store, she was holding that bag below the counter. And what's important about that is that she did so before she even received the receipt for the items that she bought. So it was clear that she had no indication of making sure that those items that she placed there in the first place, that she did remember to pick up off the counter and take with her, were not paid for. There was no attempt whatsoever to confirm whether those items were paid for. I have a statement on a previous encounter playing into this verdict. Well, the previous encounter, I think it really deals more with Issue 2, but it also, the defendant has essentially argued that the previous encounter created a prejudice against the defendant because the obvious inference was that she had been arrested by this loss prevention supervisor for shoplifting in the past. Well, that's not an obvious inference. And Susan Weber testified that she had other jobs besides being a loss prevention supervisor in the past. And she also testified that she dealt with store-wide inventory issues, including helping employees prevent losing items. And so her role is not simply the shoplifting authority. She deals with inventory loss generally. And that's what the testimony has established. And so it would be reasonable for the jury to infer that perhaps there was some other context that they were involved with the defendant. I'm not going to speculate because that would be improper, but there were other possible inferences. It wasn't a possibility. It possibly could have been except for a prior offense. Well, as I said, she's involved in loss prevention. It's possible that the defendant was seeking to obtain some sort of item in the store. Perhaps she purchased something, she got home with a box, and it was empty. So she would have dealt with the loss prevention supervisor to determine, were these items stolen before? Are there incorrect shoes in the shoe box? Any one of those things could be under the broad scope of dealing with store-wide inventory. And, again, this was something for the jury to try to infer. And the jury was also aware that the defendant had been convicted of theft in the past because the defendant sought to testify. And so the state was able to introduce that she had one conviction, when she actually had several more convictions. Those were not made aware to the jury. And so based on her testimony, it's also possible that she knew the defendant from some other job that she had. Perhaps they'd been coworkers. It's not clear because it's really only a three-word statement that doesn't give you a concrete example that, yes, I know her from before, she stole. It could be like I saw a friend in the store and I followed them around the store with the camera, but, oh, in the end they ended up stealing something. All that's speculation, so it was best for the jury to make that determination because they were there, they saw the context of the testimony, and they were able to weigh the credibility. And I think part of what really hurt the defendant was not these three words, but her complete lack of credibility based on these bogus excuses that she presented for why she didn't pay for the items that were in the bag. It wasn't that improper. The previous encounter wasn't that improper. Well, initially, and partly under the second issue, the defense counsel believed that that should be known. And it appeared that his strategy was going to involve the fact that Coles maybe wanted to entrap her or set her up in some way. And so initially, the state had initially wanted to bring in the fact that she'd been arrested for theft by this loss prevention supervisor, but the parties worked it out, and the trial court stamped its approval on the statement that she'd had a previous professional encounter. And so even if defense counsel had objected to that, it's possible that it's likely that the trial court would not have sustained that objection because they'd already approved of that arrangement before we even entered the trial. And additionally, under issue two, the issue of whether or not his assistance was ineffective, I believe the objection would have been... But under the rules of evidence, that would have been improper. It would have been a decision for the court to make. But it would have been improper if the court made that decision under the rules of evidence. That she had a prior conviction? Yeah, that would have been improper, and so I believe they came to an agreement here where these three words don't tell them... You know, when I say the defendant has a prior conviction, the jury knows that. That's a solid, concrete fact. They know she's committed theft before. A previous professional encounter does not convey that solid fact. The jury would have to make a leap or make an assumption that that previous professional encounter involved a shoplifting case. That's propensity evidence. It would go towards propensity, but just that previous professional encounter doesn't... You know, perhaps she could have been charged but never convicted. The jury could question, well, if she was convicted, they'd tell us that she was convicted because they're not legal experts. They're not aware of the rules of evidence. So there were other inferences that could be made. And when you look at all the other evidence, that wasn't prejudicial to the defendant because the evidence of her guilt was overwhelming based on her lack of credibility and based on the testimony of Susan Weber and what the jury was able to view on the video. So your argument was harmless? It would have been harmless under a stricter analysis because even if you felt that trial counsel should have objected, it was harmless because the evidence of guilt was overwhelming, so therefore there was no prejudice based on these three words. And the defendant cited a number of different cases that he says stands for the proposition that when a defense counsel condones negative testimony, it can rise to the level of ineffective assistance. This was the Bailey case, the Phillips case, and the Jackson case. But what these cases actually say is that when a defense counsel elicits negative testimony, which tends to establish an element of the crime that had not previously been established, that rises to the level of ineffective assistance of counsel because essentially you've done the state's job for them. In his reply brief, the defendant cited the case of Peter B. MacMillan as additional support for his conclusion that condoning negative testimony can rise to the level of ineffective assistance. But that case is easily distinguishable. MacMillan was really a disaster for the defendant. The defense counsel's failure to object to inadmissible hearsay that directly refuted the core strategy of his defense, the defense counsel decided to admit evidence of all of the defendant's prior criminal history as an effort to get ahead of the state. He failed to object to improper closing arguments that distorted evidence and, as that court concluded, prejudiced the defendant. And overall, the court in MacMillan, the Fifth District, stated that the outcome may have been different based on all of that. Here, we have a failure to object to three words, none of which automatically reaches the conclusion that the defendant had been convicted by this individual before. And I think it's also important to note under that Strickland analysis that the failure to object is a matter of trial strategy. And I think the defense counsel decided to not object to this because he didn't want to draw further attention to it. This was three words in the testimony of three people as well as evidence of a video. So he tried to minimize that and diffuse the importance of those three words. And also, that statement had nothing to do with his ultimate trial strategy. It's clear from the evidence that this was a two-pronged attack by a defendant to prove that there was reasonable doubt. First, the defendant argued extensively, as the defendant has argued here, that the cashier made a mistake. The cashier should have rung these items up. That's her job. That's what she should be doing. And second, the defendant argued that she was confused by the discounts that were being applied. Given the facts of this case, that's a legitimate defense. And so this previous professional encounter, to continue to reiterate that in front of a jury or to object to it and draw more attention, would have had no positive connection to this other legitimate strategy. So there was no use for it. And so I think that's why we can show that the defendant wasn't prejudiced because counsel had a strategy, it was a legitimate strategy, and he followed through with that strategy. Just because the strategy doesn't work doesn't mean he was ineffective. Are there any other questions? Well, for these reasons, Your Honor, the people respectfully request that this Court affirm the defendant's conviction and sentence. Thank you. Thank you. Counsel. Your Honors, there are reasonable inferences and there are making-up facts. The State is making-up facts. What facts are they making-up? Everything about her concealing the bag, her concealing the bag below the counter, Ms. O'Brien lifting the whole bag up when the cashier's back was turned, everything is in my reply brief. And I trust Your Honors will read it and I trust that Your Honors will watch the video. I think it just speaks to the fact that the State just doesn't have any actual evidence to argue, that it's resorting to making-up facts. It's outrageous, it's highly inappropriate, and it's not up to the Court. It's very disappointing. Counsel argued that there's no evidence of how much the smaller corals in the whole bag cost. That's not true. Officer Bieber, on pages RP2 and 79 through 80, testified that they were $69. Susan Weber, on pages 68, RP2, testified that they were $70. There's evidence to that. Again, there is zero evidence in the record of Ms. O'Brien concealing this bag below the counter. I have no idea where the State is getting that from. It is not in the record. As far as the State categorizing Ms. O'Brien's answers as excuses, that's rhetoric. She gave different answers because she was asked different questions. All her answers were responsive and reasonable. Yes, the jury was aware of Ms. O'Brien's prior conviction. It was admitted for impeachment only because she testified. It's not substantive evidence of guilt. Arguing that is improper. What's the argument? I'm sorry? What's the argument? It's an argument, but it's not admissible for that purpose. The trial court specifically limited it for impeachment, so you can't. With respect to Ms. O'Brien not being in a hurry, because she was going to customer service to pick up a hold and because she was waiting for the cashier to check her out, she was going through normal procedures. She did what she had to do to pay for a quarrel that she intended to pay for. With respect to Susan Weber having responsibility for store-wide inventory, the state is mischaracterizing her testimony. It was asked, what is irresponsible? What do you view? What is loss prevention? She was testifying that she deals with store-wide inventory for purposes of loss prevention. She's not interacting with customers saying, oh, I need to find this, I need to find that, or I'm making a return, I got the wrong shoes, the box contained the wrong pair of shoes. That's not what she does. Again, Your Honor, I trust that you will read the record. I know you do. You always do. And I trust that you will watch the video. We would ask that you reverse. Thank you, counsel. We'll take this matter under advisement, and I'll take a break for panel discussion.